UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

David Longaker,

                Plaintiff,                         **MEMORANDUM OPINION**
                                                                                **AND ORDER**
v.                                                                    Civil No. 12-185 ADM/JSM

Boston Scientific Corporation; Guidant
Sales Corporation,

                Defendants.

_____

Robert S. Nelson, Esq., Nelson Law Group PC, San Bruno, CA; Timothy C. Selander, Esq., and David E. Schlesinger, Esq., Nichols Kaster, PLLP, Minneapolis, MN, on behalf of Plaintiff.

Kyle T. Fogt, Esq., Daniel G. Wilczek, Esq., and Joel P. Schroeder, Esq., Faegre Baker Daniels LLP, Minneapolis, MN, on behalf of Defendants.

_____

## I. INTRODUCTION

On April 27, 2012, the undersigned United States District Judge heard oral argument on Defendants Boston Scientific Corporation ("BSC") and Guidant Sales Corporation's ("GSC") Motion to Dismiss Plaintiff's Complaint [Docket No. 5]. For the reasons stated below, Defendants' Motion is granted.

## II. BACKGROUND

David Longaker ("Longaker") began working for BSC as a sales representative in California starting in September 2007, and in 2009 he entered into a new Employment Agreement with a three-year term. Compl. [Docket No. 1] ¶¶ 10–13. The term of the Employment Agreement was from October 1, 2009, through September 30, 2012, and it guaranteed Longaker an annual base salary of $60,000. Id. ¶¶ 13, 15; see also, Schroeder Decl. [Docket No. 10] Ex. B ("Emp't Agreement") § 3(a). Additionally, the Employment Agreement

guaranteed that Longaker would receive at least $60,000 in commissions from sales. Compl. ¶ 15; Emp't Agreement §§ 3(b-e). This minimum salary of $120,000 was guaranteed unless Longaker's employment was terminated for an ennumerated reason. Compl. ¶ 15; Emp't Agreement § 9(b). All disputes relating to the Employment Agreement or Longaker's employment were to be governed under Minnesota law, and Minnesota was selected as the exclusive jurisdiction for the resolution of disputes and claims. Emp't Agreement § 17. During Longaker's employment with BSC, he worked and lived exclusively in California. Compl. ¶ 7.

In April 2010, Longaker's supervisor Ken Crowley ("Crowley") accused Longaker of threatening him, but BSC's Human Resources Department ("HR") ultimately dismissed the accusations. Compl. ¶ 16. During the investigation of the accusations, Longaker disclosed to HR that one of BSC's Field Clinical Representatives was romantically involved with a BSC client. Id. ¶ 17. Longaker disclosed the relationship to HR because he believed it an unlawful conflict of interest. Id.

In May 2010, Longaker was placed on a Performance Improvement Plan ("PIP") for not meeting his sales goals at Stanford Hospital in 2009 and early 2010. Compl. ¶ 18. The PIP specified sales goals that Longaker was required to meet by July 31, 2010. Id. ¶ 20. Longaker met those sales goals by early June 2010. Id. On June 14, 2010, Longaker through his attorney sent a letter threatening to sue Defendants on various legal claims stemming from his receipt of a PIP. Id. ¶¶ 19, 21.

Shortly after this, Longaker received an email from HR requiring him to come to an emergency meeting. Id. ¶ 22. At the meeting, Longaker was informed he was being investigated for irregularities in his expense reports. Id. ¶ 23. The investigation centered on a May 2010

dinner he had paid with his personal credit card rather than requesting the funds in advance. Id. The investigation continued through August 2010, and Longaker was required to attend two other meetings regarding the investigation. Id. ¶ 24.

On September 1, 2010, Longaker received a written performance review from his manager Crowley, stating that he had met his sales goals specified in the PIP. Id. ¶ 26. On September 30, 2010, Crowley instructed Longaker to attend a meeting at the BSC office the following day. Also on September 30, 2010, Longaker filed for Chapter 7 bankruptcy in the U.S. Bankruptcy Court for the Northern District of California. Schroeder Decl. Ex. E. On October 1, 2010, Longaker was terminated. Compl. ¶ 27.

In his bankruptcy petition, Longaker stated he had no executory contracts and signed the petition "under penalty of perjury that the information provided in [the] petition is true and correct." Schroeder Decl. Ex. E at 3, 17. Longaker did not amend his disclosures to the bankruptcy court to reflect his guaranteed payments under the Employment Agreement. The bankruptcy court discharged Longaker's debts on January 11, 2011. Schroeder Decl. Ex. F.

On February 22, 2011, Longaker filed a lawsuit against BSC in the Superior Court for the County of Santa Clara, California. Compl. ¶ 7. On April 14, 2011, BSC removed the case to the United States District Court for the Northern District of California. Compl. ¶ 8. BSC then moved to dismiss Longaker's complaint, and on September 7, 2011, Longaker's California complaint was dismissed for improper venue due because the Employment Agreement's forum selection clause required all disputes be tried in Minnesota. Compl. ¶ 9; Schroeder Decl. Ex. I. Longaker filed the present suit on January 25, 2012. See generally Compl.

## III.  DISCUSSION

### A.  Standard of Review

A motion to dismiss for lack of subject matter jurisdiction is governed by Rule 12(b)(1) of the Federal Rules of Civil Procedure.  Standing is a prerequisite for establishing subject matter jurisdiction.  Jones v. Gale, 470 F.3d 1261, 1265 (8th Cir. 2006).  A court may consider matters outside the pleadings in considering a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  See Osborn v. United States, 918 F.2d 724, 729 n.6 (8th Cir. 1990).

Rule 12(b)(6) of the Federal Rules of Civil Procedure governs a motion to dismiss for failure to state a claim.  In considering a Rule 12(b)(6) motion, the court views the pleadings in the light most favorable to the nonmoving party and treats the alleged facts as true.  See Ossman v. Diana Corp., 825 F. Supp. 870, 879-80 (D. Minn. 1993).  Conclusions of law made by the nonmoving party, however, are not "blindly accept[ed]."  Westcott v. City of Omaha, 901 F.2d 1486, 1488 (8th Cir. 1990).  A Rule 12(b)(6) motion to dismiss is granted when the factual allegations, even assumed to be true, do not entitle that party to relief.  See, e.g., Taxi Connection v. Dakota, Minn. & E. R.R. Corp., 513 F.3d 823, 826-27 (8th Cir. 2008).

Pleadings must "contain a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a).  Rule 8(a) has been interpreted to mean that a pleading must allege "enough facts to state a claim of relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  To satisfy the standard of facial plausibility, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  This plausibility determination is "context-specific" and "requires the reviewing court to draw

on its judicial experience and common sense." Id. at 1950. However, "where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but not 'shown'—'that the pleader is entitled to relief.'" Id. (quoting Fed. R. Civ. P. 8(a)(2)).

### B. Analysis

Longaker's Complaint alleges breach of contract and retaliation in violation of Minnesota Statute § 363A.01, the Minnesota Human Rights Act ("MHRA"). Defendants argue Longaker's retaliation claim under the MHRA should be dismissed because he lacks standing and because the claim is barred by the statute of limitations. Defendants further contend Longaker's claim for breach of contract should be dismissed for lack of subject matter jurisdiction because he lacks standing or because the claim is barred by judicial estoppel. The arguments are analyzed in turn below.

### 1. Longaker's MHRA Claim Warrants Dismissal for Lack of Standing and for Being Time-Barred

Longaker's retaliation claim under the MHRA alleges that he engaged in protected activity by complaining of what he deemed an inappropriate relationship, and that his termination on October 1, 2010, was unlawful retaliation based on that protected activity. See generally Compl. ¶¶ 34–44.

A general presumption exists against the extra-territorial application of a state's statutes. See, e.g., In re Pratt, 18 N.W.2d 147, 153 (Minn. 1945) ("The laws of one state of their own vigor have no extraterritorial effect."); In re St. Paul & K.C. Grain Co., 94 N.W. 218, 225 (Minn. 1903) ("Statutes of a state have no effect ex proprio vigore beyond its own limits, and, even if a legislature should intend its laws to apply to persons and property in other states, its enactments

in that direction would be wholly inoperative and void."). The MHRA protects Minnesota employees from discrimination, and an employee is defined as "an individual who is employed by an employer and who resides or works in this state." Minn. Stat. § 363A.03, subd. 15. Moreover, the MHRA's "Declaration of Policy" states that, "It is the public policy of this state to secure for persons **in this state**, freedom from discrimination . . . ." Minn. Stat. § 363A.02, subd. 1(a) (emphasis added). The MHRA's "Declaration of Policy" further states that "discrimination threatens the rights and privileges of the inhabitants **of this state** and menaces the institutions and foundations of democracy." Minn. Stat. § 363A.02(b) (emphasis added). Given the explicit language limiting application of the MHRA to in-state residents and employees, numerous courts have refused to applied the MHRA to out-of-state individuals who neither live or work in Minnesota. See Harrington v. Nw. Airlines, Inc., No. A03-192, 2003 WL 22016032, at *2 n.1 (Minn. Ct. App. Aug. 26, 2003) (noting the district court's refusal to apply the MHRA to out-of-state persons); Arnold v. Cargill, Inc., No. Civ. 012086, 2002 WL 1576141, at *3–4 (D. Minn. July 15, 2002) ("[T]he MHRA does not provide for extraterritorial application and [] the facts of this case do not dictate otherwise.").

Longaker argues that the MHRA should apply or, in the alternative, that California law must apply. Regarding the application of California law, Longaker has failed to allege any California causes of action, and therefore any argument that California law should apply is unavailing.[1] As for the application of the MHRA, Longaker lacks standing under MHRA.

---

[1] Although Plaintiff accuses Defendants of "bait-and-switch" unfairness for moving to dismiss his California action for improper venue and then seeking to dismiss his Minnesota action for lack of subject matter jurisdiction, Plaintiff drafted the present Complaint and chose to allege a retaliation claim only under the MHRA, rather than under California's Fair Employment and Housing Act ("FEHA") or under Title VII. Plaintiff's offer to "stipulate that California law

Longaker is a California resident, and his entire employment with BSC took place in California. Because the MHRA does not apply extraterritorially, and because Longaker has neither lived nor worked in Minnesota, he lacks standing to assert a claim under the MHRA. Accordingly, his MHRA must be dismissed for lack of subject matter jurisdiction.

Even if Longaker had standing to assert a claim under the MHRA, his claim would be time-barred by the statute of limitations. A "motion to dismiss may be granted when a claim is barred under the statute of limitations." Varner v. Peterson Farms, 371 F.3d 1011, 1016 (8th Cir. 2004). A claim of discriminatory practice under the MHRA must be filed, either as a civil action or an administrative charge with the Minnesota Department of Human Rights, "within one year after the occurrence of the practice." Minn. Stat. § 363A.28, subd. 3. The one-year limitation period is suspended "during the time a potential charging party and respondent are voluntarily engaged in a dispute resolution process . . . , including arbitration, conciliation, mediation or grievance procedures . . . ." Id.

The discriminatory action alleged in Longaker's MHRA claim was his termination on October 1, 2010. Longaker filed his California action on February 22, 2011, but that complaint did not allege an MHRA claim. Longaker first filed an MHRA claim on January 25, 2012, more than a year after the "occurrence of the [alleged] practice." Longaker does not argue that his MHRA claim was timely or that the one-year statute of limitations was suspended because he was engaged in a dispute resolution process with Defendants pursuant to Minnesota Statute § 363A.28, subd. 3. Instead, Longaker contends that his California retaliation action was timely

---

should apply," Pl.'s Mem in Opp'n to Mot. to Dismiss [Docket No. 13] 2, has not been agreed to by Defendants, and is not considered here.

and therefore his MHRA claim, although filed beyond the applicable statute of limitations, should be subject to equitable tolling.

The doctrine of equitable tolling is an exception to statutes of limitations, the purpose of which are the "speedy and fair adjudication of the respective rights of the parties." Pecoraro v. Diocese of Rapid City, 435 F.3d 870, 875 (8th Cir. 2006) (citation omitted). Courts generally require strict compliance with a statute of limitations, and the doctrine of equitable tolling is a rare deviation reserved for inequitable circumstances. Id. Equitable tolling allows a plaintiff to sue beyond the statute of limitations period when he has been prevented from timely filing due to inequitable circumstances "truly beyond the control of the plaintiff." Id. (citing Hill v. John Chezik Imports, 869 F.2d 1122, 1124 (8th Cir. 1989)). Equitable tolling should be applied in unique circumstances when "a party acts diligently, only to find himself caught up in an arcane procedural snare." Id. (citing Dakota Truck Underwriters v. S.D. Subsequent Injury Fund, 689 N.W.2d 196, 202 (S.D. 2004)). A plaintiff must demonstrate the following requirements to equitably toll a statute of limitations: (1) timely notice; (2) lack of prejudice to the defendant; and (3) reasonable, good-faith conduct by the plaintiff. Pecoraro, 435 F.3d at 875 (citation omitted). The statute of limitations under the MHRA may be equitably tolled. See, e.g., Kroll v. St. Cloud Hosp., Civ. No. 05-915, 2006 WL 1851138, at *2 (D. Minn. June 30, 2006).

The circumstances here do not warrant an equitable tolling of the MHRA statute of limitations. Longaker has failed to prove that his original choice of venue in a California court, notwithstanding the Minnesota choice-of-law provision and forum-selection clause in the Employment Agreement, was an inequitable circumstance "truly beyond [his] control." Prosecuting a cause of action under inappropriate law or in an improper venue does not rise to

the level of an "arcane procedural snare." Further, Longaker does not adequately explain why he failed to timely assert his Minnesota claim within the one-year statute of limitations. When Longaker's California complaint was dismissed on September 7, 2011, Longaker could still have filed a timely complaint by October 1, 2011. Instead, the Minnesota Complaint was filed over four months after the statute of limitations had expired. Finally, Longaker has not demonstrated reasonable, good-faith conduct, timely notice to all defendants (given that Defendant GSC was not a party to the California complaint), or a lack of prejudice to the defendants here. Accordingly, the statute of limitations does not warrant equitable tolling, and Longaker's MHRA retaliation claim is barred by the statute of limitations.

### 2. Longaker's Breach of Contract Claim Warrants Dismissal for Lack of Standing

Defendants argue that Longaker lacks standing to pursue his breach of contract claim because the guaranteed payments under the Employment Agreement belong to Longaker's bankruptcy estate. Defendants also assert that Longaker is judicially estopped from bringing this claim because he did not disclose his Employment Agreement, with its guaranteed income provisions, on his bankruptcy petition. Longaker responds that his contract claim is not property of the bankruptcy estate because it arose after the commencement of his bankruptcy case. He also disputes that he had an obligation to disclose his contractual claims in his bankruptcy petition, and therefore argues that he is not estopped from litigating his claim for breach of contract.

The definition of the bankruptcy estate was intended to be broad. See In re Graham, 726 F.2d 1268, 1270 (8th Cir. 1984). "[A]ll legal or equitable interests of the debtor in property as of the commencement of the case" are transferred to the bankruptcy estate upon the filing of a

bankruptcy petition. 11 U.S.C. § 541(a)(1). "[T]he term 'property' has been construed most generously and an interest is not outside its reach because it is novel or contingent or because enjoyment must be postponed." Segal v. Rochelle, 382 U.S. 375, 379 (1966). An individual filing a bankruptcy petition must disclose legal rights held as of the time of a bankruptcy petition. See U.S. ex rel. Gebert v. Transport Admin. Servs., 260 F.3d 909, 913 (8th Cir. 2011); Laxdal v. Bank of Am. Home Loans Servicing, LP, No. 11-3075, 2011 WL 6888798, at *2–3 (D. Minn. Dec. 30, 2011).

Numerous courts have held that 11 U.S.C. § 541(a)(1) includes in the bankruptcy estate all interests held by the debtor, "even future, non-possessory, contingent, speculative, and derivative interests." In re Carlton, 309 B.R. 67, 71 (Bankr. S.D. Fla. 2004); see also Johnston v. Hazlett (In re Johnston), 209 F.3d 611, 612 (6th Cir. 2000) (rejecting argument that "because [debtor] was not entitled to the [Earned Income Tax Credit] until the end of the tax year, she had neither a legal nor an equitable interest in the [EIC] at the time she filed her petition, and therefore, it was not part of the bankruptcy estate."); In re Yonikus, 996 F.2d 866, 869 (7th Cir. 1993) ("A debtor's contingent interest in future income has consistently been found to be property of the bankruptcy estate . . . . In fact, every conceivable interest of the debtor, future, nonpossessory, contingent, speculative, and derivative, is within the reach of § 541."); In re Booth, 260 B.R. 281, 283 (6th Cir. BAP 2001) (affirming that a "profit sharing payment was sufficiently rooted in [debtor's] prepetition past to be included in property of his bankruptcy estate under § 541(a)").

Courts have also determined that post-petition causes of action based on a pre-petition employment agreement guaranteeing payments are part of the bankruptcy estate. In In re

Ryerson, 739 F.2d 1423 (9th Cir. 1984), the court determined that the contract value, "albeit contingent at the time of filing and not payable until such time as his appointment is terminated or cancelled, is includable within the bankruptcy estate pursuant to section 541(a)(1)." Id. at 1425. In another case, In re Robb & Stucky Ltd., LLLP, 8:11-bk-02801-CED, 2011 WL 3948805 (Bankr. M.D. Fla. Sept. 7, 2011), the court found that severance pay belonged to a bankruptcy estate even when termination occurred after the filing of the bankruptcy petition. Id. at *2–3. The court reasoned that the employee "acquired contingent pre-petition rights, which would be triggered upon the occurrence of the contingency, i.e., his termination," and stressed that the employer's liability for the "severance compensation arises from the pre-petition act of entering into the Employment Agreement." Id. The overwhelming weight of authority and the uniformity of courts' reasoning are compelling evidence that contingent interests in property belong to the bankruptcy estate.

Longaker argues that he has standing to assert his breach of contract claim because the damages he is seeking were not property of the bankruptcy estate. Specifically, he contends that because the guaranteed payments of $120,000 arose from his employment termination the day after he filed his bankruptcy petition, the property did not belong to the bankruptcy estate. Longaker's argument, however, flies in the face of case law which has consistently held contingent interests set forth in a pre-petition contract — like guaranteed salary upon termination — to be part of a bankruptcy estate. The Employment Agreement, which Longaker seeks to enforce to recover his contractual benefits, was entered into by BSC and Longaker nearly one year prior to his bankruptcy petition. Although the contingent interest did not vest until the day after Longaker filed for bankruptcy, his interest in that contractual benefit was part of the

bankruptcy estate. Accordingly, Longaker now lacks standing to assert his claim for breach of contract.

Longaker cites a single case — Johnson v. Si-Cor Inc., 28 P.3d 832 (Wash. Ct. App. 2001) — to support his proposition that bankruptcy estates do not include contingent legal claims like his. The Johnson case, however, concerned whether an individual was obligated to amend his schedule of assets to include a potential legal claim against McDonald's when his Chapter 13 bankruptcy petition was converted to a Chapter 7 petition. Id. at 911–12. The court in Johnson held that the plaintiff was not precluded from pursuing his legal claim by reason of judicial estoppel. Id. This case is readily distinguishable from Longaker's position. Most noticeably, Johnson involved an accident that the plaintiff sustained during his bankruptcy. Longaker's legal claim, however, stems from an Employment Agreement that was in effect at the time he filed his petition. Additionally, the Johnson court decided that judicial estoppel did not preclude the plaintiff from pursuing his claim where his Chapter 13 petition had been converted to a Chapter 7. Here, however, Longaker lacks standing because the contingent interests he held in the Employment Agreement became property of the bankruptcy estate when he filed his Chapter 7 bankruptcy petition.

Defendants also claim that Longaker is judicially estopped from pursuing his breach of contract claim because he failed to disclose his Employment Agreement in his bankruptcy petition. Some case law supports the application of judicial estoppel to causes of action not listed on a debtor's bankruptcy schedule. See Stallings v. Hussman Corp., 447 F.3d 1041, 1047 (8th Cir. 2006). However, judicial estoppel is "an extraordinary remedy" to be applied only "when a party's inconsistent behavior will result in a miscarriage of justice." Id. at 1049

12

(citation omitted). Because this Court has determined that Longaker lacks standing to assert his breach of contract claim, it need not reach the issue of whether his claim is judicially estopped due to inconsistent representations in his bankruptcy proceedings.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss [Docket No. 5] is **GRANTED**; and

2. Plaintiff's Complaint [Docket No. 1] is **DISMISSED with prejudice**.

**LET JUDGMENT BE ENTERED ACCORDINGLY**.

BY THE COURT:

    s/Ann D. Montgomery
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: May 23, 2012.